NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1855
_____

PAUL M. ST. JOHN,
Appellant

v.

POSTMASTER GENERAL OF THE UNITED STATES
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 2-09-cv-04196
District Judge: The Honorable Michael M. Baylson

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 27, 2012

Before: FUENTES, SMITH, and JORDAN, *Circuit Judges*

(Filed: April 2, 2012)

_____

OPINION
_____

SMITH, *Circuit Judge.*

Paul M. St. John filed a civil action in the United States District Court for

the Eastern District of Pennsylvania, alleging that his employer, the United States

Postal Service (USPS), retaliated against him because of testimony he provided at an administrative hearing on an earlier charge of national origin discrimination. St. John is of Scottish heritage. This action, according to St. John's complaint, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3 and 2000e-16, as amended. After the close of discovery, the USPS successfully moved for summary judgment. This timely appeal followed.[1]

St. John, who was born in Scotland, has been employed by the USPS as a City Carrier at the post office in Elkins Park, Pennsylvania, since May of 2003. On November 3, 2004, St. John filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that he had been discriminated against based on his national origin when management, particularly his supervisor James McGinn, did not pay him for eight hours of sick leave. In addition, St. John alleged that he had been discriminated against when his supervisor placed him on "leave without pay" status for a 40-hour period. On March 15, 2007, during an EEOC hearing, St. John was asked how his employer's actions affected him. St. John responded that he "could have throttled [McGinn]" and shortly thereafter

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We exercise final order jurisdiction under 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *See Carrasca v. Pomeroy*, 313 F.3d 828, 832 (3d Cir. 2002).

stated that he "could kill [McGinn]."[2]

Due to concerns about workplace violence, the USPS has instituted a zero-tolerance policy regarding any violence or threats of violence. The USPS's counsel at the EEOC hearing viewed St. John's statements about his current supervisor as a violation of the zero-tolerance policy. In accord with that policy, she notified the human resources manager, who convened a "Threat Assessment Team" to determine whether action should be taken against St. John because of his potentially threatening remarks.

On March 20, 2007, several USPS managers held a "Threat Assessment Meeting" to discuss St. John's EEOC hearing testimony. On March 21, 2007, Postal Inspector Shawn Dougherty questioned St. John about his testimony in the presence of his union representative Christopher Lanetti. During the interview, both St. John and Lanetti informed Dougherty of complaints St. John had made the week before against McGinn regarding falsification of employees' "clock rings."[3]

---

[2] The EEOC Administrative Judge decided on June 22, 2007, that St. John was not discriminated against based on his national origin when he was denied sick time or charged for 40 hours of leave without pay. St. John did not appeal that determination.

[3] "Clock rings" refers to each time a worker uses his time card to punch in or out of work. St. John alleged that employees were not being paid for their actual time worked because someone was falsifying the employee records.

At the conclusion of the interview, St. John gave Dougherty a written statement in which he acknowledged that he was aware of the USPS's zero-tolerance policy regarding threats of violence, and further indicated that he was upset when he testified before the EEOC. St. John called his choice of words "regretful," but said that his "statements were taken completely out of context" and that he "only meant to emphasize [his] feelings and not [his] intentions."

Dougherty allowed St. John to return to his mail route, leading St. John and Lanetti to believe the investigation was over. About five hours later, management approached St. John on his route and directed him to return to the office. Upon his return, St. John was met by the Officer-in-Charge and the Postmaster. St. John requested the presence of his union representative. When Lanetti arrived, St. John was informed that he was being placed on emergency placement leave (EPL). He was directed to clean out his locker and his mail truck in the presence of his supervisor.

Shortly thereafter, the Manager of Post Office Operations advised the Officer-in-Charge that Dougherty had determined that St. John was not a threat and had permitted St. John to return to service. Within fifteen minutes of being placed on EPL and before St. John left the building, St. John was advised by management that the EPL had been rescinded and that he could return to work.

A month later, St. John filed a charge of retaliation with the EEOC. The

EEOC initially dismissed the complaint, finding that St. John had not established a prima facie case of retaliation because he had not suffered an adverse action, and that the USPS had articulated a legitimate, nondiscriminatory reason for its actions. St. John appealed to the EEOC Office of Federal Operations (OFO), which reversed the decision. Pursuant to the OFO's order, the USPS conducted an investigation and determined that St. John was entitled to compensatory damages of $300. Unsatisfied with the nominal damages, St. John initiated a civil action against the United States Postmaster General pursuant to 42 U.S.C. § 2000e-16(c), seeking "*de novo* consideration" of his retaliation claim. *See Morris v. Rumsfeld*, 420 F.3d 287, 291 (3d Cir. 2005).

After discovery concluded, the USPS filed a motion for summary judgment. The District Court granted the motion, concluding that St. John had failed to demonstrate the required element of having sustained a materially adverse action. In addition, the Court determined that St. John had failed to demonstrate that USPS's legitimate, nondiscriminatory reason for placing him on EPL was a pretext for retaliation. St. John appealed, challenging the District Court's determination that he failed to demonstrate a prima facie case of retaliation and that he did not show that USPS's reason was a pretext for retaliation.

We will assume for purposes of this appeal that St. John adduced sufficient

evidence to establish a prima facie case of discrimination.[4]  As a result, the burden of production shifted to USPS to provide a legitimate, nondiscriminatory reason for its actions.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997) (citing, *inter alia*, *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).  The USPS met its burden, citing its zero-tolerance policy and St. John's threatening comments.  Thus, St. John had the burden of demonstrating that this reason was a pretext for retaliation.  *Fuentes*, 32 F.3d at 764-65.  We agree with the District Court that St. John has not adduced evidence that would permit a reasonable factfinder to cast doubt on the USPS's reason.  Accordingly, we will affirm the judgment of the District Court.

---

[4]  Title VII's antiretaliation provision proscribes discriminating against a protected individual because he opposed a practice forbidden by Title VII or participated in a Title VII proceeding.   42 U.S.C. § 2000e-3(a).  In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 59 (2006), the Supreme Court declared that "[n]o one doubts that the term 'discriminate against' [in the antiretaliation provision]  refers to distinctions or differences in treatment that injure protected individuals."  In light of the zero-tolerance policy at the heart of this appeal, we are skeptical that St. John established that he was treated differently than any other USPS employee who uttered a potentially threatening statement.  The USPS did not raise this issue, however, in challenging whether St. John sufficiently demonstrated a materially adverse action, and we need not address it in resolving this appeal.